## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 1:18-cv-00251-GMS |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| THE NORTH RIVER INSURANCE | ) | |
| COMPANY, and RSUI INDEMNITY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## PFIZER INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
## (1) TO REMAND TO DELAWARE SUPERIOR COURT OR, IN THE ALTERNATIVE,
## (2) TO ENJOIN DEFENDANTS' PROSECUTION OF THEIR NEW YORK ACTION

*Of Counsel*:

Robin L. Cohen
Adam S. Ziffer
Marc T. Ladd
Denise N. Yasinow
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY 10036
Tel: (212) 402-9400

Kenneth J. Nachbar (No. 2067)
John P. DiTomo (No. 4850)
Barnaby Grzaslewicz (No. 6037)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market St., 16th Floor
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200 – Telephone
(302) 658-3989 – Facsimile
knachbar@mnat.com
jditomo@mnat.com
bgrzaslewicz@mnat.com

Dated:  March 30, 2018

*Attorneys for Plaintiff Pfizer Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT .................................................................................. 2

STATEMENT OF FACTS ........................................................................................ 3

    A.  The Parties And Insurance Policies ........................................................3

    B.  The *Jones* Lawsuit And The Insurers' Coverage Denials ......................4

    C.  Pfizer's Action And The Insurers' New York Action .............................5

ARGUMENT ............................................................................................................ 5

I.   The Court Should Exercise Its Broad Discretion Under The Declaratory
    Judgment Act And Remand This Action To Delaware Superior Court ............................ 5

    A.  Under *Rarick*, Pfizer's Breach Of Contract Claims And Declaratory
        Judgment  Claims Are Not "Independent Claims"................................7

    B.  The Court Should Decline Jurisdiction Under *Wilton/Brillhart* And *Reifer*
        Because This Is A Coverage Dispute With No Federal Law Or Interest At
        Stake, And The Insurers Removed Solely To Engage In Forum Shopping ..........10

II.  If The Court Retains Jurisdiction, It Should Enjoin Insurers From Proceeding In
    Their Second-Filed New York Action ............................................................. 14

CONCLUSION....................................................................................................... 17

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Allstate Ins. Co. v. Seelye*,
    198 F. Supp. 2d 629 (W.D. Pa. 2002)........................................................................11, 12, 13

*Arch Ins. Co. v. David H. Murdock*,
    N16C-01-104 EMD CCLD, 2018 WL 1129110 (Del. Super. Ct. Mar. 1, 2018) ...................12

*Atl. Mut. Ins. Co. v. Gula*,
    84 F. App'x 173 (3d Cir. 2003) ...........................................................................................11

*Brillhart v. Excess Ins. Co. of Am.*,
    316 U.S. 491 (1942)..................................................................................................... passim

*Chapman v. Lexington Ins. Co.*,
    No. 2:16-cv-455 (DSC), 2016 WL 6885901 (W.D. Pa. June 17, 2016)...........................12, 13

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,
    265 F. Supp. 2d 445 (D. Del. 2003)..................................................................................15, 16

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    No. 10-cv-3542 (MAM), 2011 WL 5127813 (E.D. Pa. Oct. 31, 2011)..................................14

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*,
    651 F.2d 877 (3d Cir. 1981)................................................................................................14

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)...........................................................................................................6, 7

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941)................................................................................................16

*Datex-Ohmeda Inc. v. Hill-ROM Servs., Inc.*,
    185 F. Supp. 2d 407 (D. Del. 2002)....................................................................................15

*Dixon v. Progressive N. Ins. Co.*,
    Civ. No. 2:08-cv-1010 (TFM), 2008 WL 4072816 (W.D. Pa. Aug. 27, 2008).....................12

*E.E.O.C. v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988).....................................................................................14, 15 ,17

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*,
    248 F. Supp. 3d 570 (D. Del. 2017)....................................................................................10

*Encompass Ins. Co. of Am. v. Connelly*,
    No. 15-cv-737, 2015 U.S. Dist. LEXIS 74993 (W.D. Pa. June 10, 2015) .............................12

*Grider v. Keystone Health Plan Cent., Inc.,*
    500 F.3d 322 (3d Cir. 2007)...........................................................................15, 16

*Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.,*
    No. 16-cv-221, 2017 WL 3208676 (W.D. Pa. July 27, 2017) ...............................13

*Intellectual Ventures I LLC v. Altera Corp.,*
    842 F. Supp. 2d 744 (D. Del. 2012)......................................................................16

*Jermax, Inc. v. AK Steel Corp.,*
    No. 09-cv-4438 (NLH), 2010 WL 2652276 (D.N.J. June 24, 2010)......................15

*Markel Ins. Co. v. Connolly, Connolly & Heun, LLP,*
    No. 2:17-cv-1885 (WJM), 2017 WL 4618750 (D.N.J. Oct. 16, 2017)....................8

*Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.,*
    No. 96-cv-101 (SLR), 1996 WL 328594 (D. Del. Apr. 23, 1996) .........................15

*Mills Ltd. P'ship v. Liberty Mut. Ins. Co.,*
    No. 09C-11-174 FSS CCLD, 2010 WL 8250837 (Del. Super. Ct. Nov. 5,
    2010) .....................................................................................................................13

*Munich Welding, Inc. v. Great Am. Ins. Co.,*
    415 F. Supp. 2d 571 (W.D. Pa. 2006)...............................................................6, 11

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
    416 F.3d 146 (2d Cir. 2005).................................................................................16

*Osenbach v. Allstate Fire & Cas. Ins. Co.,*
    135 F. Supp. 3d 315 (E.D. Pa. 2015) .......................................................11, 12 14

*Owen v. Hartford Ins. Co.,*
    No. 14-cv-924 (RBK), 2014 WL 2737842 (D.N.J. June 17, 2014).........................6

*Rarick v. Federated Serv. Ins. Co.,*
    852 F.3d 223 (3d Cir. 2017)........................................................................6, 7, 8, 9

*Reifer v. Westport Ins. Corp.,*
    751 F.3d 129 (3d Cir. 2014)........................................................................ passim

*State Auto Ins. Cos. v. Summy,*
    234 F.3d 131 (3d Cir. 2000).........................................................................6, 12, 13

*Tompkins Ins. Agencies, Inc. v. Sumner,*
    No. 16-cv-2217 (CDJ), 2016 WL 3345452 (E.D. Pa. June 15, 2016)..................8, 9

*TrustcoBank v. Automated Transactions LLC*,
   933 F. Supp. 2d 668 (D. Del. 2013)..........................................................................................15

*Universal Concrete Prods., Inc. v. Pike Co.*,
   No. 17-cv-2589 (GJP), 2018 WL 347625 (E.D. Pa. Jan. 10, 2018) ..................................13, 14

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995)................................................................................................... passim

<u>Other Authorities</u>

28 U.S.C. § 1404(a) .................................................................................................................13

28 U.S.C. § 2201(a) ........................................................................................................ passim

Plaintiff Pfizer Inc. ("Pfizer") submits this memorandum of law in support of its motion (1) to remand this action against Defendants The North River Insurance Company ("North River") and RSUI Indemnity Company ("RSUI") (collectively, the "Insurers")[1] to Delaware Superior Court or, in the alternative, (2) to enjoin Insurers from proceeding in their duplicative action filed in New York federal court.

## NATURE AND STAGE OF PROCEEDINGS

This action concerns Pfizer's pursuit of insurance coverage owed under the insurance policies sold by the Insurers for Pfizer's costs incurred in defending and settling an underlying lawsuit against Pfizer and its former officers and directors styled *Mary K. Jones v. Pfizer Inc., et al.*, No. 1:10-cv-03864 (AKH) (S.D.N.Y.) (the "*Jones* Lawsuit"). There are sixteen carriers in Pfizer's 2008-2009 insurance coverage tower, all essentially providing the same scope of coverage. Thirteen have admitted coverage and paid their full policy limits for *Jones*, or have otherwise resolved their disputes with Pfizer in settlement. Other than one top-layer excess insurer whose policy contains a mandatory arbitration clause, the Insurers here are the only intransigent holdouts that have refused to reimburse Pfizer for their share of the $400 million that Pfizer incurred in settling the *Jones* Lawsuit. Following a failed mediation and mandatory waiting period, on January 31, 2018, Pfizer commenced a lawsuit in the Superior Court of the State of Delaware, its state of incorporation, seeking a declaratory judgment on the Insurers' coverage obligations and asserting related claims for damages resulting from the Insurers' breach and anticipatory breach of contract. Pfizer's case was assigned to the Honorable Eric M. Davis.

---

[1] Following the filing of the parties' respective Complaints, Pfizer and Defendant Federal Insurance Company executed a settlement resolving their dispute related to this coverage litigation. *See* D.I. 10.

Insurers, however, seek to avoid litigating this dispute in the most appropriate and efficient forum first chosen by Pfizer, the natural plaintiff on these coverage claims. Indeed, the Insurers have already taken two steps in their attempt to avoid Pfizer's choice of a proper forum. On January 31, 2018, hours after Pfizer commenced this lawsuit, the Insurers filed a Complaint in the United States District Court for the Southern District of New York (and then were forced to refile on February 1 due to a deficient pleading) (the "New York Action"). The New York Action seeks the exact same rulings on the exact same coverage dispute as does Pfizer here. Two weeks later, on February 13, 2018, the Insurers removed this action to the United States District Court for the District of Delaware. D.I. 1. Doubtless a third step is planned, and given the opportunity, the Insurers can be expected to move to dismiss or transfer this first-filed Delaware dispute to join their duplicative, anticipatory and second-filed New York Action.

## SUMMARY OF ARGUMENT

Pfizer, the first-to-file plaintiff, selected a Delaware state forum in which to resolve this dispute. The Insurers, on the other hand, selected a New York federal forum for their second, duplicative, and defensive suit raising the same issues. The Insurers removed this action from Delaware Superior Court solely to use this Court as a procedural stepping stone in an improper attempt to reach what they believe is a more favorable forum in New York – where their second-filed action is pending. The proper and fair result in these circumstances is a remand to Delaware Superior Court. Under United States Supreme Court and Third Circuit law, federal district courts have broad discretion under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), to decline jurisdiction over declaratory judgment actions, even though jurisdiction is otherwise proper based on diversity. Here, even though Pfizer's action contains both declaratory and nondeclaratory claims for breach and anticipatory breach of contract, the Court still may exercise its broad discretion to decline jurisdiction and remand this action to state court because

Pfizer's breach claims are necessarily dependent on, and substantively intertwined with, its claim for declaratory relief. Moreover, remand is appropriate under the Court's discretion here. This is an action for insurance coverage that will involve only state law, specifically Delaware state law, and no federal law or federal interest is at stake. Finally, and critically, the DJA was never intended to be used by the Insurers to deprive Pfizer, the natural plaintiff on these claims, of its chosen forum. Accordingly, the Court should remand to Delaware Superior Court.

In the alternative, if the Court decides to retain jurisdiction, it should enjoin the Insurers from pursuing the second-in-time filed New York Action. The first-filed rule justifies this injunction, as the Insurers, not Pfizer, have abused the DJA to engage in forum shopping in an attempt to override Pfizer's first-filed action with coercive claims in its home state of Delaware.

## STATEMENT OF FACTS

### A.   The Parties And Insurance Policies

Pfizer is a pharmaceutical company incorporated in Delaware with its principal place of business in New York. D.I. 1-1 ¶ 7. North River is incorporated in, and has its principal place of business in, New Jersey. *Id.* ¶ 9. RSUI is a New Hampshire corporation with its principal place of business in Georgia. *Id.* ¶ 10.

For the policy period of April 16, 2008 to April 16, 2009, Pfizer purchased $225 million in Directors' and Officers' ("D&O") coverage across 14 layers of insurance, all in excess of a $25 million self-insured retention. *Id.* ¶ 16. All the excess policies in the 2008-2009 coverage tower "follow form" to the primary policy sold by Illinois National Insurance Company (the "Illinois National Policy"), meaning that, aside from attachment points and limits of liability (and unless otherwise specified), the excess policies incorporate and adopt the terms, conditions, definitions, and exclusions of the Illinois National Policy. *Id*. ¶ 17. This includes the excess policies here, which share the twelfth excess layer of Pfizer's coverage tower, providing $25

million excess of $175 million: (1) policy no. 5560050006, issued by North River, with limits of $10 million (the "North River Policy"); and (2) policy no. NHS628836, issued by RSUI, with limits of $15 million (the "RSUI Policy") (collectively, the "Excess Policies"). *Id.* ¶ 21. The Illinois National Policy's Alternative Dispute Resolution ("ADR") provision, to which the Insurers' Excess Policies follow form, provides that the law of Delaware, as Pfizer's state of incorporation, applies to the Excess Policies in arbitration or mediation. *See id.* p.45. The Excess Policies do not contain any other choice-of-law provision.

## B.     The *Jones* Lawsuit And The Insurers' Coverage Denials

On or about May 11, 2010, plaintiff Mary Jones filed the *Jones* Lawsuit as a putative class action against Pfizer and certain Pfizer directors and officers. In general, the *Jones* Lawsuit alleged that defendants had concealed from investors Pfizer's unlawful off-label marketing of its pharmaceutical products, including Bextra, Geodon, Lyrica and Zyvox, and the company's alleged illegal payment of kickbacks to physicians to promote the sale of these drugs, causing Pfizer stock to trade at artificially inflated prices throughout the class period. The *Jones* plaintiffs alleged two causes of action: violations of Sections 10(b) (securities fraud) and 20(a) (fraud by control person) of the Securities Exchange Act of 1934. *Id.* ¶¶ 35-36. Pfizer incurred more than $42 million in costs defending the *Jones* Lawsuit for more than five years, before settling it for $400 million. *Id.* ¶ 39.

Pfizer promptly gave notice of the *Jones* Lawsuit to all of its insurers. All insurers that issued policies underlying the Insurers' Excess Policies have either paid their full policy limits or settled with Pfizer with regard to coverage for the *Jones* Lawsuit. *Id.* ¶¶ 40-41. Despite having the same policy language as these other insurers, North River and RSUI maintained their denial of coverage and refused to pay a dime toward Pfizer's costs in the *Jones* Lawsuit. Briefly, and as discussed in more detail in Pfizer's Complaint, the thrust of the Insurers' denial of coverage for

the *Jones* Lawsuit is based on their position that *Jones* is related to earlier lawsuits and claims against Pfizer, and therefore, is excluded under their 2008-2009 Excess Policies. *See id.* ¶¶ 42-52. Pursuant to the Illinois National Policy's mandatory ADR provision that is incorporated into the Insurers' Excess Policies, the parties conducted a mediation on October 3, 2017, but it was unsuccessful and was terminated that same day. *See id.* ¶¶ 53-54.

## C.   Pfizer's Action And The Insurers' New York Action

Following the required 120-day waiting period after Pfizer terminated the mediation, at 12:01 a.m. on January 31, 2018, Pfizer filed its action in the Delaware Superior Court seeking insurance coverage for the *Jones* Lawsuit, styled *Pfizer Inc. v. Federal Insurance Co., et al.*, N18C-01-366 EMD [CCLD] (Del. Super. Ct.). Declaration of John P. DiTomo, dated March 30, 2018 ("DiTomo Decl."), ¶ 2 and Ex. 1. Pfizer's Complaint contains three causes of action against the Insurers: (1) breach of contract; (2) anticipatory breach of contract; and (3) declaratory relief. D.I. 1-1 ¶¶ 56-73. Later that evening sometime after 5:00 p.m., the Insurers filed their Complaint against Pfizer in the New York Action, styled *Federal Insurance Co., et al. v. Pfizer, Inc.*, No. 1:18-cv-00878-KBF (S.D.N.Y.) (*id.*, Dkt. No. 1), that is labeled on the docket as a "FILING ERROR – DEFICIENT PLEADING" (the Insurers refiled their Complaint on February 1, *see* DiTomo Decl., Ex. 2).

Two weeks later, on February 13, the Insurers removed to this Court on the basis of diversity of citizenship. D.I. 1.

## ARGUMENT

## I.   THE COURT SHOULD EXERCISE ITS BROAD DISCRETION UNDER THE DECLARATORY JUDGMENT ACT AND REMAND THIS ACTION TO DELAWARE SUPERIOR COURT

The DJA provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a) (emphasis added). The DJA,

therefore, does not require district courts to hear every declaratory judgment action; rather district courts have "discretionary power to decline to hear declaratory judgment actions[.]" *Munich Welding, Inc. v. Great Am. Ins. Co.*, 415 F. Supp. 2d 571, 575 (W.D. Pa. 2006) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000)). Under the Supreme Court's decisions in *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491 (1942) ("*Brillhart*") and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ("*Wilton*"), and as later applied by the United States Court of Appeals for the Third Circuit in *Reifer v. Westport Insurance Corp*., 751 F.3d 129 (3d Cir. 2014) ("*Reifer*"), federal courts have broad discretion under the DJA to decline jurisdiction of declaratory judgment actions if certain factors weigh in favor of abstaining. *See, e.g.*, *Owen v. Hartford Ins. Co.*, No. 14-cv-924 (RBK), 2014 WL 2737842, at *2 (D.N.J. June 17, 2014) ("under what is sometimes known as the *Brillhart–Wilton* abstention doctrine, district courts may dismiss, remand, or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims").

Recently, the Third Circuit held that even where a complaint contains both declaratory *and* nondeclaratory claims, the court still may decline jurisdiction over the entire case under its broad discretion under the DJA. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223 (3d Cir. 2017) ("*Rarick*"). Under *Rarick*, when a complaint contains claims for both legal and declaratory relief, the court applies the "independent claim" test to determine "whether the legal claims are independent of the declaratory claims" for the purposes of declining jurisdiction under *Wilton/Brillhart* and *Reifer. Id.* at 229. Under the independent claim test, "[n]on-declaratory claims are 'independent' of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *Id.* at 228 (citation omitted). In that case, the court may only decline jurisdiction in

"exceptional circumstances" under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"). However, "[i]f the legal claims are dependent on the declaratory claims, . . . the court retains discretion to decline jurisdiction of the entire action, consistent with [the Third Circuit's] decision in *Reifer*." *Rarick*, 852 F.3d at 229.

Here, Pfizer's claims for breach and anticipatory breach of contract are inextricably intertwined with its claim for declaratory judgment – they will rise and fall together and a judgment on one will necessarily include a commensurate judgment on the other – they are not independent. Thus, the standard under *Wilton/Brillhart* and *Reifer* applies to whether the Court may decline jurisdiction under the DJA. Under that standard, the Court should exercise its broad discretion and remand this action because this action concerns only state insurance law, with no federal law or interest at stake, and because the Insurers are misusing the Court's jurisdiction under the DJA as a means to secure their preferred forum in New York and deprive Pfizer of its chosen forum in Delaware Superior Court.

### A. Under *Rarick*, Pfizer's Breach Of Contract Claims And Declaratory Judgment Claims Are Not "Independent Claims"

Unlike the "bright line" rule employed by other Circuits that have held that the *Colorado River* standard for abstention applies whenever an action contains both declaratory and non-frivolous coercive claims, the Third Circuit has adopted the "independent claim" test to "give[] district courts the flexibility" to decline jurisdiction over such actions under the DJA. *Rarick*, 852 F.3d at 230. Accordingly, "the mere fact that a litigant seeks some non-frivolous, non-declaratory relief in addition to declaratory relief [does not] mean[] that a district court's *Wilton/Brillhart* discretion to decline to hear the declaratory claim should be supplanted by the narrow *Colorado River* doctrine." *Id.* (citation omitted).

Indeed, district courts in this Circuit have found that, under the independent claim test, insurance coverage cases that involve coercive and declaratory claims should be treated under the broader discretion of *Wilton/Brillhart* and *Reifer*. For example, in *Markel Insurance Co. v. Connolly, Connolly & Heun, LLP*, No. 2:17-cv-1885 (WJM), 2017 WL 4618750, at *1 (D.N.J. Oct. 16, 2017), the plaintiff insurer sued in federal court for fraud damages and declaratory judgment that it owed no duty to defend or indemnify its insureds (a law firm and its attorney) for a state court legal malpractice action, and the insureds moved to dismiss the action under the court's discretionary authority under the DJA. The court acknowledged that, under the independent claim test, the insurer's state and common law fraud claims alone were sufficient to invoke the court's diversity jurisdiction. *Id.* at *3. Nevertheless, the court held that "the legal claims remain[ed] substantively intertwined" with, and were "dependent on" the insurer's request for declaratory relief that it owed no duty to defend or indemnify the insured in the underlying action. *Id.* ("To rescind and void the Policy based on [the insured law firm]'s alleged false or misleading statements in the Policy Application that led to issuing it would resolve the state insurance and common law fraud claims against [the insured attorney]"). Thus, because "the viability of the fraud claims rest[ed] upon the claims for declaratory relief," the court held that the *Wilton/Brillhart* and *Reifer* discretionary standard for dismissal under the DJA applied, and declined jurisdiction. *Id.* at *3-4.[2]

---

[2] Similarly, in *Tompkins Insurance Agencies, Inc. v. Sumner*, No. 16-cv-2217 (CDJ), 2016 WL 3345452 (E.D. Pa. June 15, 2016), the defendants removed plaintiff's state court action to federal court, and one of the defendants subsequently filed a separate federal action seeking a declaration of rights under an employment agreement, as well as coercive claims for injunctive relief, violation of Pennsylvania's wage law, and tortious interference with contract. *Id.* at * 1. As *Tompkins* was decided prior to the Third Circuit officially adopting the "independent claim" test in *Rarick*, the court surveyed its sister courts to determine whether the "heart of the matter" or independent claim test was the appropriate legal standard for declining jurisdiction over

(Continued . . .)

The Third Circuit's decision in *Rarick* does not compel a different outcome. In *Rarick*, two different policyholders brought claims against the same insurer for declaratory judgment that the insurer was required to provide uninsured motorist coverage pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law, and claims for breach of contract for not paying said coverage under their policies. 852 F.3d at 226. The Third Circuit held that the discretionary standard to decline jurisdiction under *Wilton/Brillhart* and *Reifer* did not apply because the breach claims were sufficient to invoke the court's jurisdiction on their own, and thus, were independent of the declaratory judgment claim. *Id.* at 230.

Here, although Pfizer's claims for breach and anticipatory breach of contract are sufficient to trigger this Court's diversity jurisdiction alone, those claims are still dependent upon, and rise and fall with, Pfizer's claim for declaratory judgment. Unlike the policyholders in *Rarick*, whose claims for declaratory judgment required a determination of the insurer's obligation to provide uninsured motorist coverage under a state statute, here, *both* Pfizer's declaratory judgment claim and breach of contract claims are based on the Insurers' obligations under their Excess Policies alone. Thus, while the *Rarick* policyholders' claims for breach of the insurance policies arguably could stand on their own, independent from a finding that the insurer violated a state statute in not providing coverage, here, if the Court declares that the Insurers do

---

(. . . continued)
"mixed" declaratory and nondeclaratory claims. *Id.* at *6-7; *Rarick*, 852 F.3d at 228 ("heart of the matter" test "examines the relationship between the [declaratory and nondeclaratory] claims . . . [to] determine[] what the 'essence of the dispute' concerns" in deciding to decline jurisdiction over mixed claims). Ultimately, the *Tompkins* court held that it need not choose between the two tests; *Wilton/Brillhart* was the appropriate standard for remand under either test "[b]ecause the coercive claims are dependent on the outcome of the declarations sought and therefore the declarations [were] what truly form[ed] the heart of the matter." *Tompkins*, 2016 WL 3345452, at *7.

not owe coverage under their Excess Policies for the *Jones* Lawsuit, then Pfizer's claims for breach and anticipatory breach of contract are necessarily also determined.

Because Pfizer's legal and declaratory causes of action are dependent on each other and substantively intertwined, the Court should apply the *Wilton/Brillhart* and *Reifer* discretionary standards for remand.

**B.    The Court Should Decline Jurisdiction Under *Wilton/Brillhart* And *Reifer* Because This Is A Coverage Dispute With No Federal Law Or Interest At Stake, And The Insurers Removed Solely To Engage In Forum Shopping**

Under *Reifer*, the Third Circuit has directed courts deciding whether to entertain a declaratory action to weigh certain enumerated and other factors "bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for [federal] resolution." 751 F.3d at 138 (quoting *Wilton*, 515 U.S. at 289). In deciding whether to exercise its discretion to issue a declaratory judgment, the court may consider: (1) whether declaratory relief would resolve the legal uncertainty that gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of "procedural fencing" or as a means to provide another forum in a race for *res judicata*; and (8) in the insurance context, an inherent conflict of interest between an insurer's duty to defend and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 248 F. Supp. 3d 570, 577 (D. Del. 2017); *Reifer*, 751 F.3d at 146.

However, the *Reifer* court acknowledged that the factors above should be considered "to the extent they are relevant," and that "there will be situations in which district courts must consult and address other relevant case law or considerations." *Id.* at 146-47 ("there are many

potential considerations that properly inform a district court's sound and reasoned discretion."). For example, courts also have considered: (1) application of federal law; (2) federal interest; (3) whether governing state law is well-settled; (4) whether there is a parallel state proceeding; and (5) plaintiff's objection to the court's diversity jurisdiction. *See, e.g.*, *Munich*, 415 F. Supp. 2d at 576. Lastly, while the absence of a parallel proceeding weighs against abstention, that factor is not determinative. *See, e.g.*, *Reifer*, 751 F.3d at 137, 149 (concluding that it was not abuse of discretion for the district court to remand a declaratory judgment action, even in absence of parallel proceeding, because state law issues "peculiarly within the purview of the [state] court system" were raised); *Osenbach v. Allstate Fire & Cas. Ins. Co.*, 135 F. Supp. 3d 315, 321 (E.D. Pa. 2015) (lack of parallel proceeding outweighed by other relevant factors, and exercising discretion under DJA to remand insurance coverage case back to state court).

Here, all relevant factors weigh in favor of the Court declining federal jurisdiction and remanding the case to the Delaware Superior Court, or are neutral.[3] First, the Third Circuit repeatedly has advised that "federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003) (citation omitted). There is no federal law or question implicated, and there is no federal interest in this insurance coverage dispute. Rather, "this action presents

---

[3] Regarding the *Reifer* factors, factor one, whether a final decision by this Court would resolve the controversy, this factor is neutral, since the state court could resolve it just the same. Factor two, "convenience of the parties" is either neutral or weighs in favor of remand given this Court's proximity to the Delaware Superior Court. Factor three does not support retaining jurisdiction because there is no "public interest" in this particular insurance coverage dispute. Factor four, "the availability and relative convenience of other remedies," does not impact the Court's decision because there are no other remedies other than deciding the matter here or remanding the case to state court. Since there are no other state court proceedings, factors five and six are inapplicable. Likewise, the eighth factor is not implicated because this action does not involve the Insurers' duty to defend. *See, e.g.*, *Osenbach*, 135 F. Supp. at 319-20 (examining all these factors under similar circumstances).

-11-

the all too common case of an insurance company coming to federal court, under diversity jurisdiction, to receive declarations on purely state law matters." *Allstate Ins. Co. v. Seelye*, 198 F. Supp. 2d 629, 631 (W.D. Pa. 2002); *Summy*, 234 F.3d at 136 ("[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum."). In refusing to exercise jurisdiction over an insurance coverage action under the DJA, one court explained:

> Importantly, the issues of insurance coverage and defense in this case present no federal question, nor do they promote any federal interest. Indeed, this action presents the common case of an insurance company coming to federal court, under diversity jurisdiction, to receive declarations on purely state law matters. This weighs heavily against the Court exercising jurisdiction over this declaratory judgment action.

*Encompass Ins. Co. of Am. v. Connelly*, No. 15-cv-737, 2015 U.S. Dist. LEXIS 74993, at *4 (W.D. Pa. June 10, 2015). District courts in this Circuit repeatedly decline to exercise jurisdiction under the DJA, even where there is no parallel proceeding, where there is no federal interest, and the insurer merely seeks a federal forum for a determination of well-settled, state contract law.[4]

Second, Delaware law likely will be applied to the Excess Policies, as Delaware has a strong interest in a Delaware corporation seeking insurance for allegations of wrongful conduct by its officers and directors. *See, e.g.*, *Arch Ins. Co. v. David H. Murdock*, No. N16C-01-104 EMD CCLD, 2018 WL 1129110, at *9 (Del. Super. Ct. Mar. 1, 2018) (Delaware law applies to

---

[4] *See, e.g.*, *Osenbach*, 135 F. Supp. 3d at 321; *Seelye*, 198 F. Supp. 2d at 632; *Chapman v. Lexington Ins. Co.*, No. 2:16-cv-455 (DSC), 2016 WL 6885901, at *3 (W.D. Pa. June 17, 2016) ("the dispute in the instant case is not governed by federal law and there are no federal interests at issue. This weighs heavily against exercising jurisdiction over this declaratory judgment action"); *Dixon v. Progressive N. Ins. Co.*, Civ. No. 2:08-cv-1010 (TFM), 2008 WL 4072816, at *2 (W.D. Pa. Aug. 27, 2008) (finding that the absence of a parallel state court proceeding is not determinative and "is clearly outweighed by the lack of any federal interest in this case").

policies where insurance sought for claims against directors and officers of Delaware corporation; "when the 'risk is the directors' and officers' honesty and fidelity to the corporation, and the choice of law is between the headquarters or the state of incorporation, the state of incorporation has the most significant relationship.'").[5]  As such, this factor weighs in favor of remand as well.  *Seelye*, 198 F. Supp. 2d at 631 ("the interest of a state in resolving its own law must not be given short shrift simply because one party . . . perceive[s] some advantage in the federal forum.") (quoting *Summy*, 234 F.3d at 134); *see also, e.g.*, *Chapman*, 2016 WL 6885901, at *3-4 (remanding case to state court under discretionary authority since no federal law at issue and "[t]he state court is perfectly capable of resolving the disputes in accordance with its own law."); *see also Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.*, No. 16-cv-221, 2017 WL 3208676, at *5 (W.D. Pa. July 27, 2017) ("Pennsylvania state courts have an interest in deciding contract enforcement in the state.").

Third, the Insurers' act of removing Pfizer's action to this Court is motivated solely to leave this Court as soon as possible.  On the same day that Pfizer, the natural plaintiff on these coverage claims, filed this action in Delaware, the Insurers filed a competing New York Action in the District Court for the Southern District of New York.  DiTomo Decl., Ex. 2.  Insurers will likely file a motion to transfer (under 28 U.S.C. § 1404(a)) and/or dismiss this action in favor of their New York Action.  One thing is sure:  despite removal, the Insurers have absolutely no intention of litigating this case in this Court; rather, they are merely using this Court as a procedural stepping stone to leave.  An insurer's improper use of the DJA for procedural fencing

---

[5] *See also, e.g.*, *Mills Ltd. P'ship v. Liberty Mut. Ins. Co.*, No. 09C-11-174 FSS CCLD, 2010 WL 8250837, at *6 (Del. Super. Ct. Nov. 5, 2010) (place of incorporation, Delaware, was more significant to D&O insurance policy than company's headquarters in Virginia, and thus Delaware law applied where coverage for conduct of corporation's officers was at issue).

and forum shopping was specifically mentioned in *Reifer* (751 F.3d at 142 n.14), and it should not be countenanced by the Court. *See, e.g.*, *Universal Concrete Prods., Inc. v. Pike Co.*, No. 17-cv-2589 (GJP), 2018 WL 347625, at \*4 (E.D. Pa. Jan. 10, 2018) (declining jurisdiction in part because the case "was the third (if not the fourth) action to be filed between these parties" and was "being used 'as a means to provide another forum in a race for *res judicata*'").

Finally, "[c]ourts have held that the plaintiff's objections to federal court jurisdiction . . . is another factor in favor of remand" under the DJA. *Osenbach*, 135 F. Supp. 3d at 320. Pfizer was well aware of the parties' diversity of citizenship when it filed its Complaint (*see* D.I. 1-1 ¶¶ 7-10 (parties' citizenship)), and thus, Pfizer knew it could have filed this action in this Court at the outset. However, Pfizer wanted to pursue its state law claims for insurance coverage in the state court of Delaware, its state of incorporation. Pfizer, the natural plaintiff, should not be deprived of its chosen forum in Delaware Superior Court merely because the Insurers are misusing the DJA as a means to secure a different forum for this dispute.

## II.    IF THE COURT RETAINS JURISDICTION, IT SHOULD ENJOIN INSURERS FROM PROCEEDING IN THEIR SECOND-FILED NEW YORK ACTION

If the Court determines that remand is not appropriate and retains jurisdiction, it should enjoin the Insurers from proceeding in their duplicative New York Action under the first-filed rule. The first-filed rule provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (citation omitted). Accordingly, the first-filed rule "has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of 'similar cases . . . in different federal district courts.'" *Id.*; *see CollegeSource, Inc. v. AcademyOne, Inc.*, No. 10-cv-3542 (MAM), 2011 WL 5127813, at \*5 (E.D. Pa. Oct. 31, 2011) ("under the first-filed rule, it is 'the duty of the *court first obtaining jurisdiction* to enjoin the prosecution of the *subsequent*

*proceedings* in the other court.'") (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981)). The first-filed action should give way to one filed later only in "rare or extraordinary circumstances" such as "inequitable conduct, bad faith, or forum shopping." *E.E.O.C.*, 850 F.2d at 972.

Pfizer filed this action in Delaware Superior Court on January 31, 2018 at 12:01 a.m.[6] DiTomo Decl., Ex. 1. Whether the Insurers' New York Action is deemed "filed" as of the evening of January 31 or as of February 1 when they refiled, there is no dispute that Pfizer's action was first. On motions to enjoin, courts in this district have uniformly accorded first-filed status to the complaint filed first-in-time, regardless of the time difference between the filing of the two complaints. *TrustcoBank v. Automated Transactions LLC*, 933 F. Supp. 2d 668, 668-69, 674 (D. Del. 2013) (granting motion to enjoin and denying motion to transfer in favor of first-filed declaratory judgment action that preceded later-filed mirror image complaint by hours); *Datex-Ohmeda Inc. v. Hill-ROM Servs., Inc.*, 185 F. Supp. 2d 407, 408, 412 (D. Del. 2002) (applying first-filed rule to parallel cases filed on the same day). For example, in *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 447, 451 (D. Del. 2003), the court applied the first-filed rule and enjoined the defendant's parallel lawsuit filed in New York that was filed on the same day, but an hour and a half after, plaintiff's lawsuit.[7]

---

[6] Pfizer's original filing in state court is considered the operative filing for the purposes of the first-filed rule, not the date of the Insurers' removal to this Court two weeks later. *See, e.g.*, *Jermax, Inc. v. AK Steel Corp.*, No. 09-cv-4438 (NLH), 2010 WL 2652276, at *6 (D.N.J. June 24, 2010) ("That the original suit began in state court and was removed to federal court is immaterial; the first-filed rule still looks to the original date of filing.").

[7] *See also, e.g.*, *Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*, No. 96-cv-101 (SLR), 1996 WL 328594, at *1, *2-3 (D. Del. Apr. 23, 1996) (granting declaratory plaintiff's motion to enjoin an infringement action filed one day after the declaratory action).

Moreover, application of the first-filed rule is appropriate here, and there are no extraordinary circumstances warranting departure from the rule. First, as required by the rule, this action and the New York Action are "truly duplicative" and "materially on all fours" with each other. *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007) (citation omitted). Indeed, they involve the same exact parties, claims, policies and arguments concerning the same coverage dispute for *Jones*. *Compare* D.I. 1-1 *with* DiTomo Decl., Ex.2. Moreover, Delaware is the appropriate forum; Pfizer is a Delaware corporation, and its decision to file its lawsuit in Delaware is entitled to paramount deference. *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012) ("a corporate entity's state of incorporation [is] part of its 'home turf' . . . . [a]ccordingly, because [plaintiff] has sued [d]efendants in [p]laintiff's 'home turf,' its choice of Delaware as a litigation forum is entitled to paramount consideration."); *see also, e.g.*, *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) ("the greatest deference is afforded a plaintiff's choice of its home forum."). In these circumstances, courts invoke the policies underlying the first-filed rule to enjoin the parties from pursuing the second-filed action:

> [T]he party who first brings a controversy into a court of competent jurisdiction for adjudication should . . . be free from the vexation of subsequent litigation over the same subject matter . . . [and] [c]ourts already heavily burdened with litigation with which they must of necessity deal should . . . not be called upon to duplicate each other's work involving the same issues and the same parties.

*Chase Manhattan*, 265 F. Supp. 2d at 448 (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)).

Pfizer has not acted inequitably, in bad faith, or engaged in forum shopping that would warrant departure from the first-filed rule. In fact, the opposite is true – it is the *Insurers* that would not be entitled to proceed in the New York Action *even if* they had filed first. The Insurers removed this action, invoking this Court's jurisdiction, even though they have no

intention or desire to litigate this case here. Rather, in anticipation of Pfizer's lawsuit, they filed a defensive lawsuit in New York, where neither of them is located, in an effort to deprive Pfizer, the natural plaintiff on these coverage claims, of its chosen forum. Under the first-filed rule, "a court must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" *E.E.O.C.*, 850 F.2d at 977. Here, if the Court does not remand, the just result is enjoining the Insurers from proceeding in the New York Action and forcing them to litigate this dispute in this Court, as they requested when they removed. In no event should Pfizer be deprived of the right to litigate its first-filed claims in Delaware.

## CONCLUSION

For the foregoing reasons, Pfizer respectfully requests that the Court remand this action to the Delaware Superior Court or, if it retains jurisdiction, that the Court enjoin the Insurers from prosecuting the New York Action.

Respectfully submitted,

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

*Of Counsel*:
Robin L. Cohen
Adam S. Ziffer                    By:    */s/ John P. DiTomo*
Marc T. Ladd                      Kenneth J. Nachbar (#2067)
Denise N. Yasinow                 John P. DiTomo (#4850)
MCKOOL SMITH, P.C.                Barnaby Grzaslewicz (#6037)
One Bryant Park, 47th Floor       1201 North Market Street
New York, NY 10036                P.O. Box 1347
Tel: (212) 402-9800               Wilmington, DE 19899
Fax: (212) 402-9444               (302) 658-9200 – Telephone
                                  (302) 658-3989 – Facsimile

                                  *Attorneys for Plaintiff Pfizer Inc.*

Dated: March 30, 2018